# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## MEDFORD DIVISION

**ALICE N. MORRIS,**

Case No. 1:22-cv-01707-CL

Plaintiff,

v.

**OPINION AND ORDER**

**ASANTE HEALTH SYSTEM,** *an Oregon Corporation, et al,*

Defendants.

CLARKE, Magistrate Judge.

Self-represented Plaintiff, Alice Morris, brings religious discrimination claims against her former employer, Defendant Asante Health System ("Asante"). Full consent to magistrate jurisdiction was filed on August 19, 2024 (ECF #75). Both parties have filed cross-motions for summary judgment on all claims. For the reasons below, Asante's motion for summary judgment (#76) is GRANTED and Plaintiff's motion (#80) is DENIED.

## BACKGROUND[1]

---

[1] The facts in this section are based on the record, as submitted by the parties, and are generally undisputed, except as indicated. Plaintiff does argue that the data Asante relied upon regarding the severity of pandemic and the efficacy of the COVID-19 vaccines at the time of the events in question was not accurate, but no reliable and admissible evidence has been submitted to genuinely dispute either point. Nor has Plaintiff shown that it was unreasonable for Asante to rely upon the data provided. Like other courts in the District of Oregon, and as discussed below, this Court declines to second-guess Asante's belief in the efficacy of the vaccine or reliance on the scientific evidence and data available at the time.

Asante is a nonprofit public benefit corporation headquartered in Medford, Oregon, that operates hospitals, healthcare clinics, and laboratories throughout southwestern Oregon. Payton Decl. ¶ 3. Plaintiff Alice Morris is a Registered Nurse. In 2021 Plaintiff was working as a travel nurse through ProTouch Nursing, Inc, d/b/a Protouch Staffing ("Protouch"), and assigned to work at Asante's Rogue Regional Medical Center (RRMC) in Medford, Oregon, during the late summer and fall of 2021. She alleges that Asante unlawfully terminated her employment when she declined to be vaccinated against the COVID-19 virus based on her religious beliefs.

The SARS-CoV-2 virus, and the COVID-19 infection it causes, hit Oregon in early 2020. Ghosh Decl., ¶ 5. COVID-19 presented "a serious risk to the health and safety of our community, nation, and world." *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1238 (D. Or. 2021). Early in the pandemic, Asante managed exposure risks using screening, testing, masking, other forms of personal protective equipment ("PPE"), and social distancing. *Id.* ¶ 8. Once COVID-19 vaccines became available in December 2020, Asante encouraged vaccination and mobilized for rapid delivery of vaccinations to its employees, healthcare workers, and communities. *Id.* ¶ 9.

In the summer of 2021, a new and more deadly variant, Delta, hit Oregon communities and hospitals. Ghosh Decl. ¶ 12. Despite the precautionary efforts then in effect—such as masking, social distancing, and voluntary vaccination—the Delta variant was the deadliest and most transmissible variant of COVID-19 to date. *Id.* COVID-19 cases spiked nationwide, increasing infections by approximately 300%, which in turn led to increased hospitalizations and deaths. Ghosh Decl. ¶ 23, Ex. 6. Delta was more than two times as transmissible as the original strain, and the surge was three times worse than the previous winter. *Id.*

---

*See, e.g., Malone v. Legacy Health*, No. 3:22-cv-01343-HZ, 2024 WL 3316167, at *4 (D. Or. July 5, 2024); *MacDonald v. Oregon Health & Sci. Univ.*), No. 3:22-cv-01942-IM, 2024 WL 3316199 at *7 (D. Or. July 5, 2024) ("*MacDonald II*").

Asante's hospitals overflowed with COVID-19 patients during this time. Ghosh Decl. ¶ 14. As of August 12, 2021, 94% of the adult patients hospitalized at Asante's facilities were unvaccinated. *Id.* On August 25, 2021, RRMC experienced four COVID-19 deaths in a 12-hour period. *Id.* As of August 26, 2021, the Asante system had 186 COVID-19 patients across its three hospital locations. *Id.* During the month of August 2021, 93.6% of Asante's total inpatient admissions were COVID-19 positive, of which 88.1% were unvaccinated. Payton Decl. ¶ 5. During that same period, 89.8% of its COVID-positive ICU patients and 84.8% of its COVID-positive mortalities were unvaccinated. *Id.* All three hospitals were at full capacity, in "surge" status. Ghosh Decl. ¶ 14.

To respond to the Delta surge, Asante converted as much extra space as possible into inpatient areas and doubled up single rooms to increase capacity. Ghosh Decl. ¶ 13. Like many hospitals, by mid-August 2021, Asante was canceling nearly all non-emergency procedures to accommodate the influx of COVID-19 patients during the Delta surge, which created delays in treatment for people suffering from other serious conditions. *Id.*

During this time, data and guidance from sources including the Centers for Disease Control and Prevention (CDC) and the Oregon Health Authority (OHA) indicated that vaccines were safe and effective and offered high levels of protection against severe illness and death from COVID-19. Ghosh Decl. ¶¶ 19–26, Exs. 4–10. The data indicated that COVID-19 vaccinations not only protected the recipient of the vaccine from contracting the virus, but also decreased the likelihood that the recipient would transmit the virus. *Id.* ¶¶ 20, 35–36; Medicare and Medicaid Programs, Omnibus COVID-19 Health Care Staff Vaccination, 86 FR 61555-01 (Nov. 5, 2021) (codified in 42 C.F.R. § 484.42) (Nov. 5, 2021, to Sept. 30, 2022) ("CMS Vaccination Rule, 86 FR 61555-01"). Based in part on this data, and due to the healthcare crisis

that Asante and other hospitals in Oregon were facing, in August 2021, the Oregon Health

Authority ("OHA") issued a temporary rule requiring all Oregon healthcare providers and staff

to be fully vaccinated against COVID-19 or have an approved religious or medical exception by

no later than October 18, 2021 (the "OHA Mandate"). OAR 333-019-1010 (eff. Aug. 5, 2021, to

May 10, 2023).

The initial version of the OHA Mandate issued on August 5, 2021, provided two

alternatives for healthcare workers to either: (1) be fully vaccinated or (2) submit to weekly

testing. OAR 333-019-1010 (eff. Aug. 5, 2021, to Aug. 24, 2021). However, just 20 days after

issuing that rule, the OHA amended it to remove the testing option and require all healthcare

workers to be fully vaccinated or have a medical or religious exception in place by October 18,

2021. OAR 333-019-1010 (eff. Aug. 25, 2021, to June 30, 2023).

In September 2021, Asante implemented its COVID-19 Vaccination Policy in accordance

with the OHA Mandate. Payton Decl. ¶ 7, Ex. 1. Specifically, Asante's Vaccination Policy

provided that, by October 18, 2021, all employees must either submit proof that they were fully

vaccinated or have an approved religious or medical exception in place. *Id.*

Asante established a Religious Exception Review Committee ("Review Committee") to

review religious exception requests to the Vaccination Policy. Ghosh Decl. ¶ 39. As of October

31, 2021, Asante had approved a total of 541 religious and medical exception requests. Payton

Decl. ¶ 8. During the total period that Asante's COVID-19 vaccination requirement was in place

from August 2021 through September 2023, Asante received a total of 894 religious

accommodation requests (of which it approved 693) and 115 medical exception requests (of

which it approved 114). *Id.* ¶ 9. After October 18, 2021, Asante did not allow any unvaccinated

workers to work in-person, until September 2022, when it determined that it was sufficiently safe

for unvaccinated workers with approved exceptions to return to work in-person, subject to additional protections. Payton Decl. ¶ 11. Therefore, regardless of whether an accommodation request was granted or denied, employees who were not vaccinated and could not work remotely were either placed on leave or they were terminated.

Asante uses contract travel nurses to supplement its nursing workforce as needed. Payton Decl. ¶ 17. Asante's COVID-19 Vaccination Policy required that all contract travel nurses be vaccinated against COVID-19 in order to continue working in person after October 18, 2021. *Id.* ¶ 18. Asante collected records of COVID-19 vaccination status for those workers from their employment agencies—though in the early days of implementing its policy, Asante did not specifically track the number of contractors who were unvaccinated. *Id.* ¶¶ 18–19.

Asante asserts that travel nurses could not perform their job duties remotely, as they were inherently in-person, patient-contact nursing roles, so remote work was not an option for contract travel nurses. *Id.* ¶ 20. Plaintiff does not dispute these facts.

Asante also submits that the leave accommodation did not apply to travel nurses, as their positions were already short term, without Asante-provided benefits. *Id.* ¶¶ 17, 21. Travel nurses did not receive paid time off, healthcare, or other benefits from Asante. *Id.* Asante ended placements of all unvaccinated travel nurses effective October 18, 2021. *Id.* ¶¶ 21–22.

As stated above, Plaintiff is a contact travel nurse who was assigned to RRMC in 2021. Plaintiff asserts that she told her employment agent, Carter Ralston, about her objection to any vaccines, on July 14, 2021, prior to being placed at RRMC. Plaintiff states that Ralston assured her that vaccines were not required for the position. Plaintiff also asserts that, around the same date – July 14, 15, or 16 – she interviewed for the open assignment at RRMC, with an unknown Asante employee or manager. Plaintiff claims that she informed this unknown person of her

religious objection to the COVID-19 vaccine, and the unknown person told her, "That is fine, it's not required."

Plaintiff did not tell her Asante coworkers and supervisors of her unvaccinated status. Pl. Dep. 69:18–21; 309:10–13. She does not know if anyone at Asante knew she was unvaccinated. Pl. Dep. 211:22–25. She never told anyone she worked with at Asante about her religious beliefs generally, or her religious objection to vaccination. Pl. Dep. 145:15–23.

During her time at Asante, Plaintiff overheard coworkers make negative statements about unvaccinated people, such as that they needed their "ass beat," were "murdering us all," and deserved to be fired or arrested. Pl. Dep. 208:13–210:14. Plaintiff overheard such comments "several times." Pl. Dep. 261:2–14; 263:15–21. Plaintiff does not recall who made the comments. Pl. Dep. 262:2 ("I can't remember anyone specific."); Pl. Dep. 265:2–4; M. Morris Dep. 39:3–9. The negative comments were "about unvaccinated people generally." Pl. Dep. 214:1–4; 260:6–12. She did not overhear negative comments made specifically about people having religious objections to vaccination. Pl. Dep. 215:8–17. The comments about the unvaccinated were not directed to Plaintiff personally. *See* Pl. Dep. 210:15–23; 212:10–214:9. No one at Asante made a negative comment about Plaintiff's specific religious beliefs. Pl. Dep. 214:4–9; 265:12–22.

## STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076

(9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## EVIDENTIARY ISSUES

### I.    Asante's motion to strike is granted in part and denied in part.

Asante moves to strike some of the evidence submitted by Plaintiff in response to Asante's Motion for Summary Judgment, including certain articles and reports that are attached as exhibits to her Response, as well as those that are hyperlinked in the text of her Response. Asante also claims that Plaintiff offers significant expert testimony and opinions without laying a foundation for herself, and without submitting such evidence through a qualified expert.

Federal Rule of Evidence 702 requires that the proponent of an expert opinion must show, first, that she is qualified to render the opinion, and, second, that the opinion (a) is helpful; (b) is based on sufficient facts or data; (c) is the product of reliable principles and methods; and (d) reflects the expert's reliable application of those principles and methods to the facts of the

case. "[E]xpert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee notes to the 2023 amendment.

The Court agrees with Asante that Plaintiff has not laid a proper foundation or shown herself to be qualified to offer an expert opinion as to immunology, the efficacy of the COVID-19 vaccines, or any other vaccine research or best practices. The articles and reports submitted are not admissible and are therefore stricken from the record, as are Plaintiff's own opinions regarding vaccine efficacy and other purported scientific expertise.

Asante also moves to strike Plaintiff's references and assertions of understaffing at Asante's hospitals and facilities. As above, Plaintiff has not laid any foundation or shown personal knowledge of widespread understaffing after her termination, nor any resulting misconduct by the staff who remained. Moreover, such an assertion is not relevant to the analysis of whether or not Plaintiff experienced religious discrimination or a hostile work environment. Therefore, the Court grants Asante's motion to strike these assertions.

Finally, Asante moves to strike Plaintiff's and Mr. Morris' "sham" affidavits as inconsistent and self-serving. A. Morris Affidavit (ECF 80-4); M. Morris Affidavit (ECF 80-5). These affidavits assert that Plaintiff spoke with an unknown person in her telephone interview with Asante in July of 2021, and that Plaintiff informed that person of her objection to vaccination.

Parties are generally prohibited from creating issues of fact through affidavits contradicting their prior deposition testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806, 119 S. Ct. 1597, 143 L. Ed. 2d 966 (1999). However, before a sanction can be applied, the district court must

make a factual determination that the contradiction was actually a "sham," as opposed to the result of an honest discrepancy, a mistake, or the result of newly discovered evidence. *Kennedy*, 952 F.2d at 267.

Here, Plaintiff asserts that she simply forgot that the conversation ever happened, until her husband reminded her, much later, after her deposition. The assertion, as well as the timing of the assertion, is suspiciously convenient for Plaintiff's case. However, in an abundance of caution, and with a preference for giving a self-represented party the benefit of all of the inferences in the case, the Court does not find that the affidavits submitted are a sham. Moreover, even if they could be characterized as sham affidavits, the Court holds below that Asante is entitled to summary judgment on the issue of religious discrimination, both as to Plaintiff's prima facie case, and as to undue hardship. Therefore, there is no prejudice to Asante in admitting Plaintiff's evidence.

Asante's motion to strike is granted in part and denied in part.

**II.    Plaintiff's motion to strike is denied.**

Plaintiff moves to strike the testimony and evidence provided by Dr. Somnath Ghosh, as well as the declaration of Cassie Payton, both provided on behalf of Asante. Plaintiff asserts that Asante "failed to provide information from these witnesses prior to their motion for Summary Judgment." She claims that she did not have time to properly review the documents and testimonies prior to giving her Response. Plaintiff did not confer about this objection to Asante's evidence, nor did she request an extension of time to file her Response with the Court.

The parties' disclosure obligations are governed by Federal Rule of Civil Procedure 26. While the parties must make initial disclosures of witnesses and discoverable information under Rule 26(a)(1)(A), and eventually they must disclose their expert testimony 90 days prior to trial

under Rule 26(a)(2), and other pretrial disclosures 30 days prior to trial under Rule 26(a)(3),

there is no obligation under the rules to provide testimonial declarations in advance of filing a

dispositive motion, such as a motion for summary judgment. Further, Asante attests that it did

provide Plaintiff with the disclosures for these witnesses and the information they provide. Def.

Reply (#88) p. 22, (citing Riggs 2nd Supp Decl.). Plaintiff did not file any further response or

sur-reply to Asante's Reply brief, and the Court considers this argument conceded.

Finally, if Plaintiff believed she was prejudiced by these filings, she could have requested

more time to respond, and the Court would have granted her the time she needed. For these

reasons, Plaintiff's motion to strike is denied.

## DISCUSSION

Plaintiff has two remaining claims against Asante in this case. The first is a claim for

failing to accommodate her religious views, brought under Title VII and ORS 659A.030, and the

second is a religious hostile work environment claim, also brought under Title VII and ORS

659A.030. Asante and Plaintiff each move for summary judgment as to all remaining claims.

For the reasons below, Asante's Motion for Summary Judgment is GRANTED and Plaintiffs'

Motion for Summary Judgment is DENIED.

## I.    Asante's Motion for Summary Judgment is GRANTED

Title VII and Or. Rev. Stat. § 659A.030(1)(a) both make it unlawful for an employer to

discriminate against an individual in the terms and conditions of employment because of

religion. "Claims brought under [Oregon law] are analyzed under the same framework as claims

brought under Title VII." *El v. United Parcel Serv., Inc.*, 2020 WL 2616397, *3 (D. Or. May 22,

2020). To establish a prima facie case for religious discrimination based on a failure-to-

accommodate, the plaintiff must demonstrate that: (1) she "had a bona fide religious belief, the

practice of which conflicted with an employment duty"; (2) she "informed [her] employer of the belief and conflict"; and (3) "the employer discharged, threatened, or otherwise subjected [her] to an adverse employment action because of [her] inability to fulfill the job requirement." *Peterson v. Hewlett-Packard Co.,* 358 F.3d 599, 606 (9th Cir. 2004). If the plaintiff "makes out a prima facie failure-to-accommodate case, the burden then shifts to [the defendant] to show that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.* (citations and internal quotations omitted).

### a.  Plaintiff has failed to establish a prima facie case of religious discrimination.

Asante contends that Plaintiff has not established a prima facie case because she did not inform Asante that she had a religious belief that conflicted with an existing employment duty. While there is some non-material dispute of fact on this point, the Court agrees.

Plaintiff alleges only three communications with Asante about her objection to vaccination. Two of those communications include the allegations that she had phone call and text message conversations with her agent, Ralston, who is not an Asante employee or manager. There is no evidence in the record that Ralson passed on this communication to anyone at Asante, except that he confirmed that, at the time, in July of 2021, there was no vaccine requirement, which is undisputed. Plaintiff also alleges that she had a phone conversation with an unknown person who conducted Plaintiff's interview prior to her assignment. This conversation took place in mid-July, 2021, prior to the OHA Mandate, and prior to Asante's implementation of the COVID-19 Vaccination Policy.

Plaintiff admits that she did not inform anyone at Asante of her objection to the vaccine after the Vaccination Policy was announced. She also did not inform anyone that her objection

was due to a religious belief. Evidence from Asante's internal records confirms that no one at

Asante even knew of Plaintiff's unvaccinated status until mid-October, 2021. Payton Decl. ¶ 26,

Ex. 5. Asante learned of Plaintiff's unvaccinated status on or about October 12, 2021, when

Focus One advised that approximately 25 travelers had not provided proof of COVID-19

vaccination. *Id.* ¶ 26, Ex. 5. Asante then emailed Plaintiff on October 15, 2021, requesting that

she submit proof of her vaccination status:

> I hope this finds you well, I look forward to meeting you! Our travel
> nurse recruiter does not have information that indicates whether or
> not you are vaccinated. Due to the Oregon Governor's mandate that
> goes into effect October 18, 2021, you have been removed from the
> schedule starting on that day. If you are vaccinated, please send me
> a photo of your vaccination record; I will send it on to our recruiter
> to get this all squared away and we can get you back on the schedule.
> If you are not vaccinated, I respect your choice and I'm sorry for the
> way all of this is happening.

*Id.* ¶ 27, Ex. 6.

Asante claims that Plaintiff did not respond to Asante's email, *id.*, which Plaintiff does

not dispute. Plaintiff's last shift at Asante was on October 16, 2021, Pl. Dep. 223:21–24.

The Court finds that the conflict between Plaintiff's religious belief and her employment

duty did not arise, and could not have arisen, until after Asante announced and implemented the

Vaccination Policy. Thus, even if she believed that her disclosure in the interview in July, 2021,

had created an official, formal record of her vaccine objection, Plaintiff still had an obligation to

inform Asante of the conflict between that objection and Asante's policy, once it arose. Giving

notice to her employment agent, Ralston, who was not an Asante employee, was insufficient.

She also had an obligation to inform Asante of the religious nature of the conflict, so that Asante

could consider a reasonable accommodation. She has not met either part of this requirement.

Therefore, Plaintiff has not established a prima facie case of religious discrimination.

**b. Asante could not have reasonably accommodated any in-person employee's unvaccinated status without undue hardship.**

Plaintiff cannot establish a prima facie case of religious discrimination. Even if she could, however, Asante has shown that it could not have accommodated her unvaccinated status without due hardship.

An employer can show that accommodating an employee would present an "undue hardship," if it demonstrates that the "burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). To demonstrate a substantial burden, an employer must show that the "accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 470. In evaluating an employer's proffered undue hardship, "courts must ... take[ ] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer. *Id.* at 470-71 (internal quotation marks omitted).

Consistent with this, when conducting an undue hardship analysis, courts in the District of Oregon have considered the following factors: (1) the information available at the time the defendant made its accommodation decision; (2) economic and non-economic costs of the accommodation; and (3) the cumulative or aggregate effects of an accommodation requested by multiple, similarly situated employees. *See Lavelle-Hayden v. Legacy Health,* No. 3:22-CV-01752-IM, 2024 WL 3822712, at *8–*10 (D. Or. Aug. 14, 2024); *Parker v. PeaceHealth*, No. 6:23-cv-00450-MTK, 2024 WL 4993472, at 5 (D. Or. Dec. 5, 2024). Moreover, specific to evaluating undue hardship in the context of COVID-19 vaccinations, courts in this district have determined that the EEOC provides sensible and relevant guidance consistent with *Groff*:

> Considerations relevant to undue hardship can include, among other
> things, the proportion of employees in the workplace who already
> are partially or fully vaccinated against COVID-19 and the extent of

employee contact with non-employees, whose vaccination status could be unknown or who may be ineligible for the vaccine. (§ K.12, Updated May 28, 2021).

Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business—including, in this instance, the risk of the spread of COVID-19 to other employees or to the public.... An employer cannot rely on speculative or hypothetical hardship when faced with an employee's religious objection but, rather, should rely on objective information. Certain common and relevant considerations during the COVID-19 pandemic include, for example, whether the employee requesting a religious accommodation to a COVID-19 vaccination requirement works outdoors or indoors, works in a solitary or group work setting, or has close contact with other employees or members of the public (especially medically vulnerable individuals). Another relevant consideration is the number of employees who are seeking a similar accommodation, *i.e.*, the cumulative cost or burden on the employer. (§ L.3, Updated March 1, 2022).

*Parker*, 2024 WL 4993472, at 5 (citing EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, (last visited September 25, 2024), https://www.eeoc.gov/wysk/what-you-should-knowabout-covid-19-and-adarehabilitation-act-and-other-eeolaws [https://perma.cc/73RS-7L62] "*What You Should Know*").

Regarding the cumulative cost of a high number of employees seeking an accommodation, the Oregon Bureau of Labor and Industries ("BOLI") has similarly issued post-*Groff* decisions that dismissed nearly identical religious accommodation claims by healthcare workers who sought exceptions to a similar COVID-19 vaccine requirement policy. BOLI found that "the volume of requests alone constituted hardship" and noted that the "policy was part of a world-wide pandemic response as well as a State of Emergency declaration; not following best practice guidance presented undue hardship...." BOLI Complaint Dismissal Memo, No. EEEMRG220818-51912 (July 2, 2023). Riggs Decl. ¶ 2, Ex. 2.

Asante has produced significant evidence establishing that the practical impact of

accommodations for Plaintiff and other unvaccinated employees would have resulted in substantial increased costs in maintaining Asante's business.

First, Asante relies on preexisting state and federal COVID-19 safety measures, and the Court agrees that these government policies support finding undue hardship. It is undisputed that, prior to implementing the vaccine mandate, Asante required numerous other mandatory preventative measures, including face coverings, mask mandates, and testing. The OHA's decision in August 2021 to add an additional vaccination requirement for healthcare workers, on top of existing masking and other requirements, strongly indicates that those existing measures alone were no longer sufficient to protect healthcare workers and patients.

Likewise, Asante concluded that, while testing helps determine if someone is positive in the moment, by the time an individual tests positive they have often been contagious for 48 hours prior to the test. Ghosh Decl. ¶ 34. The costs of testing a large volume of unvaccinated employees were also significant. *Id.* Physical distancing was another helpful control measure, but its usefulness in a healthcare setting is limited: for anyone involved in direct patient care or contact, physical distancing is impractical, if not impossible. *Id.* The OHA decision and Asante's own evidence both directly refute Plaintiff's argument that allowing employees to continue to work using pre-vaccine protocols would not have created an undue hardship.

Second, Asante asserts that the nature of its healthcare services and work environment support finding undue hardship. The Court agrees. The nature of the healthcare work environment and contact with others in that workplace, "especially medically vulnerable individuals," supports a finding of undue hardship when an employee cannot work remotely. *See* EEOC, *What You Should Know*, (last visited September 25, 2024). A significant portion of Asante's patients are medically vulnerable individuals, who either could not be vaccinated (due

to age or medical conditions) or who, despite vaccination, are more susceptible to severe illness or death if they have a breakthrough contraction of COVID-19. Ghosh Decl. ¶ 7. Considering the context of the global pandemic, and the Delta surge in 2021, Asante reasonably believed that protecting these patients from exposure to COVID-19 from unvaccinated staff was a matter of life or death.

Third, Asante reasonably relied on medical and scientific data available at the time, which supported its determination that allowing unvaccinated employees to work in-person would increase the likelihood of spreading COVID-19, which would result in a less-safe workplace, and potentially cost the health, safety, and lives of patients and workers at Asante. Ghosh Decl. ¶¶ 14–38, Exs. 1– 11; *EEOC, What You Should Know* (last visited September 25, 2024); CMS Vaccination Rule, 86 FR 61555-01. Particularly in the fall of 2021, the available medical and scientific data showed that unvaccinated individuals presented a meaningfully higher risk of transmitting COVID-19 to others. *See MacDonald II*, 2024 WL 3316199 at *7 (concluding that "it is appropriate to confine the [undue hardship] analysis to the information available to the employer when it made its undue hardship decision"). In July 2021, the CDC found that unvaccinated individuals were eight times more likely to contract COVID-19, and twenty-five times more likely to develop severe illness or die as a result, as compared to fully vaccinated individuals. Ghosh Decl. ¶ 22, Ex. 5. Studies at the time also showed that at least one of the vaccines was approximately 95% effective at preventing hospitalization and death, and vaccination had already saved at least 279,000 lives and 1.5 million hospitalizations through June 2021. Ghosh Decl. ¶¶ 21–25, Exs. 4–8. The CMS concluded that "fewer infected staff and lower transmissibility equates to fewer opportunities for transmission to patients." CMS Vaccination Rule, 86 FR 61555-01. Asante reasonably relied on the scientific research and data

available at the time that it determined that allowing unvaccinated employees to work in-person in a healthcare setting would have been an undue hardship.

Fourth, Asante asserts that the volume of exception requests that it received supports finding undue hardship. The Court agrees. As discussed above, federal EEOC guidance recommends consideration of the number of employees who are seeking a similar accommodation because this impacts the cumulative cost or burden on the employer. BOLI has stated that "the volume of requests alone [can] constituted hardship." Here, by the end of October 2021, Asante received a total of 690 religious exception requests (approximately 11% of its employees) and had already approved a combined total of 541 (approximately 9% of its employees) religious and medical exceptions to its COVID-19 Vaccination Policy. Payton Decl. ¶ 8. During the full period that Asante determined it was not safe for unvaccinated employees to work in-person, from August 2021 through September 2022, Asante received a combined total of 1,009 religious and medical accommodation requests, of which it ultimately approved 807 (approximately 13% of its workforce). *Id.* at ¶ 9. Asante asserts that this high number of requests placed an incredible strain on an already exhausted staff, and that assertion has not been reasonably disputed. *Id.* In addition to the administrative strain, the sheer number of exception requests compounded the undue hardship inherent in allowing unvaccinated individuals to work in-person because the cumulative risk would have been much greater than the individual impact of any single unvaccinated employee.

Finally, numerous other courts—including in the District of Oregon—have already found that allowing unvaccinated healthcare workers, whose jobs required contact with patients and coworkers, to continue working in-person would create an undue hardship on their employers, even with other preventative measures such as masking, testing, and social distancing. *See, e.g.*

*Lavelle-Hayden*, 2024 WL 3822712, at *2, 17 (nurses, respiratory therapist, phone operator and scheduler, and security guard); *Snow*, 2024 WL 3640111, at *2, 9 (medical receptionist with "direct interaction with patients and visitors"); *MacDonald II*, 2024 WL 3316199 at *2, 12 (registered nurse in mother-baby unit of hospital); *Lake v. HealthAlliance Hosp. Broadway Campus*, No. 1:22-CV-656, 2024 WL 3226273, at *9 (N.D.N.Y. June 27, 2024) (radiology technician "required to be near the patient"); *Bushra v. Main Line Health, Inc., No.* CV 23-1090, 2023 WL 9005584, at *8 (E.D. Pa. Dec. 28, 2023) (emergency-room physician).

Indeed, the few cases where Oregon district courts have denied motions for summary judgment on the issue of undue hardship in vaccine-mandate cases are distinguishable and not compelling as to this case. For example, in *Cox v. Nw. Reg'l Educ. Serv. Dist.*, No. 3:22-CV-01073-HZ, 2024 WL 777598, at *12–13 (D. Or. Feb. 23, 2024), the employer permitted some unvaccinated employees to work in-person and claimed undue hardship as to other employees who were not allowed to do so. Here, there is no evidence that Asante allowed any unvaccinated employees to work in person. In *Malone*, 2024 WL 3316167, at *4, the court held that summary judgment was inappropriate without some evidence of the employer's consideration of alternative accommodations, such as additional testing, and an explanation for why those alternative accommodations would have created an undue burden. Here, Asante has presented an extensive record to show that it considered whether unvaccinated employees could work in person with other precautions, without creating an undue hardship based on transmission risk. *See Ghosh Decl.* ¶¶ 14–41, 43–44, Exs. 1–12. Asante concluded it could not do so, based on specific concerns about the efficacy, financial costs, and other impacts of allowing unvaccinated individuals to continue working in person, even with additional testing, PPE, and distancing. *Id*. These cases are not analogous or applicable to this case.

For all of the reasons above, Asante has established that allowing unvaccinated employees to work in-person would have been a substantial burden on Asante, and thus an undue hardship. This conclusion applies to any employee who could not complete all of their work tasks remotely, and would therefore need to work, at least in part, in-person at an Asante facility.

### 1. **Plaintiff could not complete all of her work remotely, and Asante could not put her on leave, therefore Asante has established undue hardship.**

As discussed above, Asante has established that allowing unvaccinated employees to work in-person in a healthcare setting during this time would have been an undue hardship. Because the in-person factor is such a crucial component to this conclusion, whether it would apply to each potential plaintiff requires an individualized inquiry into whether or not the person could perform all of their job duties remotely. *See Groff v. DeJoy*, 143 S.Ct. 2279, 2281 (2023) (Whether an accommodation constitutes an undue hardship is a "fact specific inquiry" that "is shown when a burden is substantial in the overall context of an employer's business."). However, employers have the ultimate authority to determine what are the essential functions of a job position, and if it requires in-person work. *See, e.g., Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 991 (9th Cir. 2007) (in similar ADA accommodation context, "the ADA and implementing regulations direct fact finders to consider, among other things, 'the employer's judgment as to what functions of a job are essential'") (quoting 42 U.S.C. § 12111(8)); 42 U.S.C. § 12111(8) (ADA requires that "consideration shall be given to the employer's judgment as to what functions of a job are essential"); 29 C.F.R. § 1630.2(n)(3)(i). Moreover, an employer is not required restructure an employee's duties or pass them off to another worker if doing so would be an undue hardship. *See, e.g., Lake*, 2024 WL 3226273, at *9 (holding that operational impacts from restructuring positions to avoid contact with others would create an undue hardship). This is particularly true when such a large number of employees are requesting exemptions and

accommodations. Thus, Asante was not required to restructure any employee's job duties to accommodate remote work.

Here, Asante has shown that travel nurses could not have completed their work remotely, as they were inherently in-person, patient-contact nursing roles. *Id.* ¶ 20. Remote work was not an option for contract travel nurses, and that includes Plaintiff. *Id.* Plaintiff does not submit any evidence or contention to dispute this fact.

Asante also submits that the accommodation of leave did not apply to travel nurses, as their positions were already short term without Asante-provided benefits. *Id.* ¶¶ 17, 21. Travel nurses did not receive paid time off, healthcare, or other benefits from Asante. *Id.* As such, it would not make sense to place them "on leave" from Asante. *Id.* ¶ 22. Asante ended placements of all unvaccinated travel nurses effective October 18, 2021. *Id.* ¶¶ 21–22. These facts are also undisputed. Asante has established that allowing Plaintiff, a contact travel nurse, to continue working in-person and unvaccinated would have been an undue hardship.

### 2. Having established undue hardship, there was no reasonable accommodation Asante could have made under the circumstances.

Under Title VII, a religious accommodation is reasonable if it "eliminates the [alleged] conflict between employment requirements and religious practices." *Mathisen v. Oregon Health & Sci. Univ.*, No. 3:22-cv-1250-SI, 2023 WL 6147099, at *4 (D. Or. Sept. 20, 2023) (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70–71, 107 S. Ct. 367, 93 L. Ed. 2d 305 (1986)). The obligation to offer a reasonable accommodation absent an undue hardship does not "'impose a duty on the employer to accommodate at all costs'; rather, the employer must offer only a 'reasonable' accommodation." *Id.* (quoting *Ansonia*, 479 U.S. at 70). In addition, "a reasonable accommodation need not be on the employee's terms only." *Id.* (quoting *Am. Postal Workers Union v. Postmaster Gen.*, 781 F.2d 772, 777 (9th Cir. 1986)); *Zivkovic v. S. Cal. Edison Co.*,

302 F.3d 1080, 1089 (9th Cir. 2002) ("An 'employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation.'").

Further, an employer is not required to provide an accommodation that causes harm to others. *See, e.g., Peterson*, 358 F.3d at 607 (holding that employer's duty to accommodate an employee's religious belief did not extend to accommodations that would result in discrimination or related harms against the employee's co-workers); *Nakashima v. Oregon St. Bd. of Educ.*, 344 Or. 497, 523, 185 P.3d 429 (2008) ("A religious accommodation must be 'measured' so that it does not 'override other significant interests.'"). In a recent decision denying an injunction of a school district's vaccination requirement, the Ninth Circuit echoed prior Supreme Court guidance on this point and held that "'the right to practice religion freely' is not 'beyond regulation in the public interest,' including regulation aimed at reducing the risk of 'expos[ing] the community or the child to communicable disease or the latter to ill health or death.'" *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1182 (9th Cir. 2021) (quoting *Prince v. Mass.*, 321 U.S. 158, 166–67, 64 S. Ct. 438, 88 L. Ed. 645 (1944)).

As discussed above, no accommodations involving in-person work were possible without imposing an undue hardship on Asante. Plaintiff was not eligible for unpaid leave because she was on a short-term traveling nurse contract. Finally, there is no question that continuing to pay the hundreds of employees who could not work remotely but requested a vaccine exemption would have been an undue financial hardship. The Court agrees with Asante that the same facts that support undue hardship show that no reasonable accommodation existed for unvaccinated travel nurses. Plaintiff's reasonable accommodation claims fail as a matter of law.

### 3. Plaintiff's arguments in response to Asante's summary judgment motion do not change the outcome.

Much of Plaintiff's Response brief is devoted to issues that are outside the scope of this motion and the legal issues as defined by the Plaintiff's own claims.

Whether or not Asante acted with a discriminatory or anti-religious motive, for instance, is irrelevant to a claim for failure to accommodate. *Lavelle-Hayden v. Legacy Health*, 744 F. Supp. 3d 1135, 1149 (D. Or. 2024) ("while an employer's alleged discriminatory motive is relevant to a disparate treatment claim, it is not an element of a failure to accommodate claim."); *Dykzeul v. Charter Commc'ns, Inc.*, WL 8198218, at *10 (C.D. Cal. Nov. 18, 2019) ("[I]t would be superfluous if the same facts supported liability under Title VII for both failure to accommodate and disparate treatment.").

Whether or not Plaintiff's religious beliefs are sincere is also not at issue in this case. The Court has no doubt that Plaintiff's religious beliefs are sincere and that they are in conflict with Asante's Vaccination Policy. The only material issues, however, are whether Plaintiff adequately communicated the religious nature of her objection to the Vaccination Policy, and whether Asante could have reasonably accommodated her religious beliefs without undue hardship. These issues are fully addressed above.

Plaintiff also disputes the contention that requiring employees to be vaccinated was necessary and would have been effective in halting the spread of COVID-19. Like other courts in this District, this Court declines to second-guess Asante's belief in the efficacy of the vaccine. *See Malone,* 2024 WL 3316167, at *4. As discussed above, healthcare employers were justified in relying on government data and scientific research in determining that vaccines were required and that they created a safer environment for their employees and their patients. *See id.* The one on-point case Plaintiff cites to the contrary has been vacated by the Ninth Circuit pending *en banc* review. *See Health Freedom Def. Fund, Inc. v. Carvalho*, 127 F.4th 750 (9th Cir. 2025).

Plaintiff makes a variety of other arguments, such as unsubstantiated claims of financial motivations for requiring vaccination, misplaced legal assertions about recent developments in the law as to *Chevron* deference, immaterial factual assertions about Asante's failure to require vaccinations for patients treated at Asante, and others. The Court has reviewed these arguments and finds them to be unsupported or irrelevant. None of them change the outcome in this case.

### c. Plaintiff's hostile work environment claim fails as a matter of law.

Finally, Plaintiff alleges a religious hostile work environment claim under Title VII and ORS 659A.030. *See Jernigan v. Alderwoods Grp., Inc.*, 489 F. Supp. 2d 1180, 1192 (D. Or. 2007) (applying same standard under state and federal law). To prevail at summary judgment, Plaintiff must show evidence that: (1) she was subjected to verbal or physical conduct of a religious nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. *Vasquez v. City of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

Here, Plaintiff has not alleged, let alone shown evidence, that she was subjected to verbal or physical conduct of a religious nature. She testified that no one at Asante knew of her religious beliefs, and no one ever spoke to her about her religious beliefs. While she claims she overheard disparaging comments about unvaccinated workers, she never heard anyone make such comments directed towards anyone's religion. Pl. Dep. 214:1–4; 215:8–17; 260:6–12. She also admits that none of the comments were ever made directly to her, nor were they directed at her. In her Response to Asante's Motion for Summary Judgment, Plaintiff asserts:

> Asante's claims that I was not directly bullied, harassed or threatened is untrue. I did say that no one stood in my face and directly threatened me, but you know when someone is talking about you. You know something is about you when you walk up to a group of people making threats to the unvaccinated and they stop talking and look at you funny, and all walk away or change the subject. You

> know when co-workers won't sit next to you in the cafeteria or talk
> with you outside your regular duties. You know when a couple of
> people are bad mouthing, bullying, or threatening you even though
> they are standing nearby and talking amongst themselves. You can
> sense it and feel it when people are talking about you but they're too
> cowardly to direct it at your face. It's still bullying and threatening
> behavior when it's being said behind your back. Regarding if I know
> or not if they knew I was unvaccinated, they could have. I have no
> way of knowing. All I know is that Asante allowed employees to
> continually talk about the unvaccinated in a severely negative way,
> often to include threats of physical bodily harm or that we should be
> imprisoned. It was these actions from employees of Asante that
> severely affected me emotionally and physically.

Plf. Resp. (#86) at p. 35-36. While the Court is sympathetic to Plaintiff's discomfort in the

situations described, even these allegations are not sufficient to carry her burden to prevent

summary judgment for Asante. Specifically, these comments are not enough to raise a question

of fact as to the first prong of the test because none of them are religious in nature, nor are they

sufficient for the third prong because they were not severe or pervasive enough to alter the

conditions of her employment and create an abusive work environment. Plaintiff's hostile work

environment claim fails as a matter of law.

## ORDER

Plaintiff has failed to establish prima facie claims for religious discrimination and a

hostile work environment. Moreover, Asante has shown that allowing any unvaccinated workers

to work in-person during the relevant time frame would have been an undue hardship.

Therefore, Asante's Motion for Summary Judgment (#76) is GRANTED and Plaintiff's Motion

for Summary Judgment (#80) is DENIED. Asante's motion to strike Plaintiff's evidence is

granted in part and denied in part. Plaintiff's motion to strike Asante's evidence is denied.

Plaintiff's case is dismissed, and judgment will be entered for Asante.

It is so ORDERED and DATED this __25__ day of June, 2025.

MARK D. CLARKE
United States Magistrate Judge